DECISION
{¶ 1} Relator, Gregory L. Lindsay, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for an additional award for respondent Berlekamp Plastics, Inc.'s ("Berlekamp") violation of a specific safety requirement ("VSSR"), and to issue an order granting the requested VSSR award.
{¶ 2} This matter was referred to a court-appointed magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and has recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed an objection to the magistrate's decision.
{¶ 3} Relator's objection is that the magistrate's decision is "too limited." He maintains that the magistrate was not limited to determining whether or not fire prevention is the purpose of Ohio Adm. Code 4121:1-5-18(C); rather, whether the employer can satisfy the safety rule by use of an inappropriate and dangerous method is also at issue. The rule indicates that employee exposure to air contaminants shall be minimized by at least one of six methods. Respondent Berlekamp used one of the six methods. The safety rule was enacted to regulate an employee's exposure to hazardous concentrations of dust, fumes, mists, vapors, and gases when suspended in the atmosphere. See Ohio Adm. Code4121:1-5-01(B)(4). Relator's injury did not result from his exposure to hazardous substances suspended in the air. Relator's injury resulted from an explosion of magnesium in a shop vac. There is simply no indication or authority that Ohio Adm. Code 4121:1-5-18(C) was designed to protect against the particular harm caused in the present case. Therefore, we agree with the magistrate's determination that Ohio Adm. Code4121:1-5-18(C) is inapplicable to the present circumstances.
{¶ 4} After an examination of the magistrate's decision, an independent review pursuant to Civ.R. 53, and due consideration of relator's objection, we overrule his objection and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objection overruled; writ denied.
PETREE, P.J., and WATSON, J., concur.
 APPENDIX A
{¶ 5} In this original action, relator, Gregory L. Lindsay, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him an additional award for alleged violations of specific safety requirements ("VSSR"), and to enter a VSSR award against respondent Berlekamp Plastics, Inc. ("Berlekamp").
Findings of Fact:
{¶ 6} 1. On September 15, 1994, relator sustained severe burns and other injuries while employed by respondent Berlekamp. In November 1997, the industrial claim was additionally allowed for: "upper respiratory inflammation due to fumes and vapors."
{¶ 7} 2. Relator's timely filing of a VSSR application prompted a commission investigation. The commission investigator filed a report dated July 29, 1996. The report contains relator's affidavit stating:
{¶ 8} "* * * [O]n September 15, 1994, I was working in the tooling room and in the process of using a Craftsman Belt and Disc Sander on a magnesium part to remove the rough edges. This sander was equipped with an opening that a shop vac hose could be placed into so that the magnesium dust could be deposited into the Douglas ATV High Performance Shop Vac.
{¶ 9} "I further state that I had been operating this sander for about two to three minutes when I noticed a small puff of smoke coming f[ro]m the top of the shop vac. I immediately unplugged this shop vac and proceeded to pick it up and carry it out to the landing because I was going to drop this vac over the side or set it out there so it would not smoke up the room. When I got to this landing, through the double doors, I noticed that there was several drums of lacquer thinner down below, and that there was also some very old wood stacked to the left side of this landing and also a cardboard box. I immediately realized that this would not be a very good area to leave the vac. I started back into the tooling room and was almost to the entrance door when suddenly and without warning, I heard a `woosh' and saw a bright flash in front of my face simultaneously, blowing the shop vac out of my arms, thus causing my accident of record."
{¶ 10} 3. In 1995, relator filed a civil action against Berlekamp for an intentional tort in the Sandusky County Court of Common Pleas in Ohio. In that action, relator's expert witness, Richard Hayes, submitted an affidavit executed September 15, 2000, stating:
{¶ 11} "* * * [T]he use of a Douglas Shop Vac is an inappropriate method for collection of magnesium dust in that it is not intrinsically safe for such purposes.
{¶ 12} "* * *
{¶ 13} "* * * [T]he practice of using a Douglas Shop Vacuum for the routine pickup of magnesium dust and powder was an extremely dangerous and hazardous activity. * * *"
{¶ 14} 4. The Hayes affidavit was submitted as evidence by relator in the VSSR application.
{¶ 15} 5. Richard Hayes testified as relator's expert witness at the June 13, 2001 hearing before a commission staff hearing officer ("SHO"). That hearing was recorded and transcribed for the record. During the cross-examination of Richard Hayes by Berlekamp's counsel, the following exchange took place:
{¶ 16} "[Berlekamp's counsel]: The term air contamination is defined in the OAC. Are your [sic] familiar with that?
{¶ 17} "[Mr. Hayes]: I'm not familiar with the exact language, but it is defined.
{¶ 18} "[Berlekamp's counsel]: Do you know what the permissible exposure limit is for magnesium dust?
{¶ 19} "[Mr. Hayes]: No. It's pretty high.
{¶ 20} "[Berlekamp's counsel]: Fifteen?
{¶ 21} "[Mr. Hayes]: I don't think that is correct.
{¶ 22} "HEARING OFFICER: What is the point that you are trying to make?
{¶ 23} "[Berlekamp's counsel]: He has no evidence that — —
{¶ 24} "[Employer's expert]: If I might break in for a moment. Fifteen micrograms sounds correct.
{¶ 25} "MR. HAYES: That's what it is.
{¶ 26} "* * *
{¶ 27} "[Berlekamp's counsel]: And that is determined by a time-weighted average; is that correct?
{¶ 28} "[Mr. Hayes]: Only for purposes of health related issues, not for explosive environments.
{¶ 29} "[Berlekamp's counsel]: Well, how do you ascertain a time-weighted average? How is that done?
{¶ 30} "[Mr. Hayes]: It is done by taking an air monitoring over an eight-hour period of time. You take an air monitor pump and do an atmospheric sampling of the employee's breathing zone. It had nothing to do with the explosion.
{¶ 31} "[Berlekamp's counsel]: You have reviewed no measurement whatsoever that would support a conclusion that there was a hazardous concentration of magnesium dust in the air, have you?
{¶ 32} "[Mr. Hayes]: There is no way to determine that with what was contained in the shop vac, so I did not. That is correct.
{¶ 33} "[Berlekamp's counsel]: Okay. And if there has been any air quality sampling before or after the accident at Berlekamp Plastics, you have not reviewed any of that information?
{¶ 34} "[Mr. Hayes]: I would not be interested in it, so I did not review it, that is correct.
{¶ 35} "[Berlekamp's counsel]: So the only basis for your conclusion, if I understand this correctly, that there was a hazardous concentration of air contaminants is that there was visible dust; is that correct?
{¶ 36} "[Mr. Hayes]: Inside the shop vac there obviously was, because of what occurred.
{¶ 37} "[Berlekamp's counsel]: So your testimony is that there was a hazardous concentration of air contaminate[s] inside the shop vac, which was the exhaust collection receptacle; is that correct?
{¶ 38} "[Mr. Hayes]: Enough to reach what is called the LEL and UEL range to create an explosion.
{¶ 39} "[Berlekamp's counsel]: Then you have no basis to conclude — — no reasonable basis to conclude that there was a hazardous concentration of air contaminant[s] at the point of the belt sander or the disc sander, correct?
{¶ 40} "[Mr. Hayes]: That is correct." (Tr. 58-60.)
{¶ 41} 6. Following the hearing, the SHO issued an order denying the VSSR application. The SHO's order states in part:
{¶ 42} "It is further the finding of the Staff Hearing Officer that the injured worker has not proven by a preponderance of the evidence that the employer violated O.A.C. 4121:1-5-18(C)(2)(3) (6). Those specific safety requirements apply to control of air contaminants in cases where employees are exposed to air contaminants. In the present claim, the injured worker was not injured by being exposed to air contaminants. Rather, he was injured when the unplugged and smoking shop vac that he was carrying ignited into flames, causing severe burn injuries to the injured worker. It was fire that caused the allowed injuries of record, instead of exposure to air contaminants. Based on the above, it is the finding of the Staff Hearing Officer that the specific safety requirements of O.A.C. 4121:1-5-18(C)(2)(3)(6) are not applicable to the instant claim."
{¶ 43} 7. Relator moved for rehearing pursuant to Ohio Adm. Code4121-3-20(G). The commission denied rehearing.
{¶ 44} 8. On July 11, 2002, relator, Gregory L. Lindsay, filed this mandamus action.
Conclusions of Law:
{¶ 45} The issue is whether the commission's interpretation of Ohio Adm. Code 4121:1-5-18(C) was reasonable when it determined that the rule was not applicable to the industrial injury.
{¶ 46} Finding that the commission's interpretation of its own safety rule was reasonable, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
{¶ 47} Ohio Adm. Code Chapter 4121:1-5 sets forth specific safety requirements for workshops and factories.
{¶ 48} Ohio Adm. Code 4121:1-5-01(B)(4) sets forth the following definition:
{¶ 49} "`Air contaminants': hazardous concentrations of fibrosis-producing or toxic dusts, toxic fumes, toxic mists, toxic vapors, or toxic gases, or any combination of them when suspended in the atmosphere."
{¶ 50} Ohio Adm. Code 4121:1-5-18(C) states:
{¶ 51} "Where employees are exposed to air contaminants, the air contaminants shall be minimized by at least one of the following methods:
{¶ 52} "(1) Substitute a non-hazardous, or less hazardous material;
{¶ 53} "(2) Confine or isolate the contaminants;
{¶ 54} "(3) Remove at or near source;
{¶ 55} "(4) Dilution ventilation;
{¶ 56} "(5) Exhaust ventilation; (for examples of exhaust ventilation, see rule 4121:1-5-992 of the Administrative Code).
{¶ 57} "(6) Using wet methods to allay dusts. Note: Good house-keeping is of definite value in minimizing air contaminants created by dusts."
{¶ 58} The commission concluded that fire prevention was not the purpose or object of Ohio Adm. Code 4121:1-5-18(C). This interpretation of the safety rule is at least implicit from the commission's order as well as from the transcribed statements of the hearing officer of record.
{¶ 59} Given the commission's interpretation of its safety rule that fire prevention was not its purpose, the commission concluded that the rule was inapplicable to the VSSR claim because it was a fire or explosion that caused relator's injuries.
{¶ 60} The commission's interpretation of its own safety rule is reasonable and within the rule of strict construction. Nowhere in Ohio Adm. Code 4121:1-5-18(C) or in the definition of "air contaminants" is there language to suggest that fire prevention is a purpose or object of the rule.
{¶ 61} Nevertheless, relator points out that Ohio Adm. Code4121:1-5-18(D)(1)(b) provides: "Abrasive wheel and buffing wheel exhaust systems shall be separate when the dust from the buffing wheel is of flammable material."
{¶ 62} According to relator, the reference to "flammable material" in Ohio Adm. Code 4121:1-5-18(D)(1)(b) shows that "air contaminants" include "flammable material." Pointing out that magnesium dust is a highly flammable material, relator concludes that Ohio Adm. Code4121:1-5-18(C) was intended to prevent injury by fire. (Relator's brief at 15.)
{¶ 63} In the magistrate's view, it does not necessarily follow that, if an air contaminant can be a flammable material as relator argues, that the air contaminant rule, i.e., Ohio Adm. Code 4121:1-5-18(C), has as its purpose the prevention of fire.
{¶ 64} In any event, the question here is not whether the commission could have adopted another interpretation of its rule. The question is whether the commission's interpretation is reasonable. The magistrate finds that the commission's interpretation of its rule is reasonable.
{¶ 65} Moreover, in the magistrate's view, relator's interpretation of Ohio Adm. Code 4121:1-5-18(C) would present an issue of strict construction. It is reasonable that the commission would want to avoid a strict construction issue in interpreting its rule.
{¶ 66} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 KENNETH W. MACKE MAGISTRATE